UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-00366-RJC-DSC

| | |
|---|---|
| GUY M. DUGAN, KAREN DUGAN, and MARK S. DUGAN, as trustee of THE GDM FAMILY TRUST, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PILIANA M. SCHAMENS, DAVID W. SCHAMENS, INVICTUS CAPITAL GROWTH AND INCOME FUND, LLP, INVICTUS ASSET MANAGEMENT, LLC, INVICTUS INCOME FUND, INVICTUS REAL ESTATE INVESTMENT, LLP, INVICTUS FUNDS, LLC, TRADEDESK FINANCIAL GROUP, INC., TRADEDESK FINANCIAL CORP., TRADESTREAM ANALYTICS, LTD., INVICTUS CAPITAL GROWTH FUND, LLP, INVICTUS HOLDINGS, LLP, and TRADEDESK CAPITAL, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Default Judgment And To Correct Typographical Error of Plaintiff's Name in Caption and memorandum in support (Doc. Nos. 46 and 47). The motion is ripe for adjudication. For the reasons stated below, Plaintiffs' motion is granted.

**I.     BACKGROUND**

Plaintiff's Guy M. Dugan, Karen Dugan, and the GDM Family Trust filed this lawsuit on August 11, 2015 alleging twelve cause of action against Defendants: 1) fraudulent inducement; 2) fraud; 3) breach of fiduciary duty; 4) constructive fraud; 5) conversion; 6) securities fraud; 7)

embezzlement; 8) unfair and deceptive trade practices; 9) piercing the corporate veil; 10) civil conspiracy; 11) accounting; and 12) unjust enrichment and constructive trust. (Doc. No. 1). In brief, the underlying facts relate to an alleged securities fraud committed by Defendants in which Plaintiffs invested over $800,000 in Defendant Invictus Asset Management ("IAM"), but instead of investing the money on Plaintiffs' behalf, Defendants allegedly used the money for personal gain and benefit. (Id.).

Defendants have never had an attorney enter an appearance on their behalf, with the exception of Phillips Wiegand, Jr., who settled the claims against him while his Motion to Dismiss was pending before the Court.[1] (Doc. Nos. 4, 34). Instead, Defendants David and Piliana Schamens have attempted to defend themselves and the corporate defendants pro se. Proceeding pro se, Defendants have not answered or otherwise responded to the complaint, but have filed a total of four motions for extension of time to answer. On November 23, 2015, Plaintiffs filed Waivers of Service executed by David and Piliana Schamens on their own behalf and on behalf of each of the Corporate Defendants, waiving service and stating that responses to the complaint were due January 11, 2016. On that day, Defendants filed their first Motion for Extension of Time to Answer, seeking an extension "on the grounds that defendants need additional time to investigate and prepare and [sic] an adequate Response as well as retain counsel." (Doc. No. 32). The Court gave Defendants until February 1, 2016 to respond to the complaint. (Doc. No. 33). Defendants

---

[1] Prior to his settlement, Defendant Wiegand filed a Motion to Dismiss. (Doc. No. 4). Wiegand claimed that the District Court did not have subject matter jurisdiction because: (1) Plaintiffs, as limited partners of LLCs they are suing, destroyed diversity jurisdiction; and (2) Plaintiffs entered into Subscription Agreements featuring forum selection clauses which specified Mecklenburg County Superior Court of North Carolina as the appropriate court for this action. (Id. at p. 10-11). Wiegand's motion was dismissed administratively after he settled. At this stage of the proceedings, after reviewing Plaintiff's Supplemental Memorandum (Doc. No. 29), the Court finds that it does have subject matter jurisdiction.

failed to comply with that deadline, but on February 10, 2016, filed their second Motion for Extension of Time to Answer again on the basis that "defendants need additional time to investigate and prepare and [sic] an adequate Response as well as retain counsel." (Doc. No. 36). Additionally, Defendants stated they never received a copy of the January 14, 2016 order granting Defendants' first request for an extension and the Clerk of Court told Defendants that the order was not mailed because the Court did not have an address on file. (Id.). The Court granted Defendants' Second Motion for Extension of Time to Answer and gave Defendants until February 26, 2016 to respond to the complaint. (Doc. No. 37).

On February 29, 2016, again having missed the deadline to respond to the complaint, Defendants filed their third Motion for Extension of Time to Answer. (Doc. No. 38). Defendants sought until March 2, 2016 to respond to the complaint because their "retained counsel need[ed] time for coordination to pro hac with local counsel and prepare answer." (Id.). The Court again granted Defendants' requested and ordered that they had until March 2, 2016 to respond to the complaint. (Doc. No. 39).

After Defendants failed yet again to meet the Court-ordered deadline to respond, Plaintiffs filed a Motion for Entry of Default on March 3, 2016. (Doc. No. 40). On March 4, 2016, Defendants filed their Reply to Motion for Entry of Judgment, though it more resembled a fourth Motion for Extension of Time to Answer seeking until March 7, 2016 to file their response to the complaint because "Counsel [had] been retained but [was] out of state and [had] yet been unable to complete arrangements with local counsel to pro hac vice with the Court in order to legally file with the Court the appropriate answers and motions due to scheduling conflicts," but assuring the Court that "[a]n Answer and corresponding motions have been prepared and ready to be filed upon local counsel completing the agreement to pro hac out of statement [sic] counsel. Upon

information and belief, these filings will be made on Monday, March 7." (Doc. No. 41). On March 7, 2017, the Court denied Defendants' then-latest request for an extension, and the Clerk of Court entered default against Defendants. (Doc. Nos. 42, 43, 44). Defendants did not file an answer or other response on March 7.

The case went silent for four months until, on July 22, 2016, the Court instructed Plaintiffs to file a motion for default judgment within fourteen days. (Doc. No. 45). Accordingly, on August, 5, 2016, Plaintiffs filed their Motion for Default Judgment and supporting memorandum and affidavits. (Doc. Nos. 46–47, 50–53). On September 12, 2016, Defendants filed their fifth request for an extension in this case—a Motion to Extend Time for Response to Plaintiffs' Motion for Default Judgment. (Doc. No. 55). Defendants represented that "[t]his case was settled and the terms of the settlement were abided by (see Exhibit A). Plaintiff's [sic] Counsel did not inform either the Defendant that they had not dismissed this action per the terms of the agreement and instead, have proceeded with a motion for default judgment in both State and Federal Court." (Id.). Defendants requested a hearing and to have until September 19, 2016 to respond to the Motion for Default Judgment. (Id.). On September 13, 2016, the Court obliged Defendants' request for an extension and granted the motion, giving Defendants until September 19 to respond to the Motion for Default Judgment. (Doc. No. 56). Yet again, Defendants failed to respond within the extra time allotted.

On November 10, 2016, Plaintiffs filed a Notice of Settlement and Motion to Stay Entry of Default Judgment or Dismissal until February 15, 2017, stating that the parties needed 95 days to consummate the confidential terms of the settlement. (Doc. No. 57). The Court granted Plaintiffs' motion, but after a one-week extension of the stay to consummate the terms of the settlement, Plaintiffs' requested a ruling on the pending Motion for Default Judgment. (Doc. Nos.

58–61).

On April 27, 2017, the Court scheduled a hearing on Plaintiffs' Motion for Default Judgment, which was held on June 2, 2017. The morning of the hearing, less than an hour before it began, David Schamens, still unrepresented in this matter, filed a Motion for Continuance and a Motion to Enforce Settlement or Alternatively to Vacate the Entry of Default. (Doc. Nos. 65 and 66). Defendants' Motion for Continuance sought to continue the hearing because, among other things, "[d]ue to opposing counsel's interference with pro hac counsel, Defendants are left with no counsel at this time and have been forced to make a motion pro se . . . ." (Doc. No. 65). At the hearing, the Court first heard the parties on Defendants' Motion for Continuance and denied the motion. Next, the Court heard the parties on the Motion for Default Judgment, and at the conclusion of the hearing took the motion under advisement. (Doc. No. 67).

## II. STANDARD OF REVIEW

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Nevertheless, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the

plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) ("'[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law'") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Entry of default judgment is left to the sound discretion of the trial court. Duke Energy Carolinas, LLC v. BlackRock Coal, LLC, No. 3:11-cv-616-RJC-DSC, 2012 WL 1067695 (W.D.N.C. Mar. 29, 2012) (granting default judgment in the plaintiff's favor after finding that service of the complaint and summons on defendant was sufficient yet defendant failed to defend); CF Cloninger Trucking IL Inc. v. SourceOne Group, Inc., No. 3:08-cv-00320-FDW, 2009 WL 35191 (W.D.N.C. Jan. 5, 2009) (granting default judgment when defendant failed to defend

complaint). Accord Lawbaugh, 359 F.Supp.2d at 421 (granting default judgment for permanent injunction, disgorgement and a civil monetary penalty where defendant failed to answer complaint alleging securities fraud and misappropriation). Although the clear policy of the Rules is to encourage dispositions of claims on their merits, see Reizakis v. Loy, 490 F.2d 1132, 1135 (4th Cir.1974), trial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780–81; Gaines, 635 F. Supp. 2d at 416–17). The court must make an independent determination regarding damages, and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

### III. DISCUSSION

In the words of Benjamin Franklin, "You may delay, but time will not, and lost time is never found again." It has been two years since this case appeared before the Court. Since then, the Court has granted four continuances in order for Defendants to find counsel and respond to Plaintiffs' complaint. Despite the ample time afforded to them, Defendants have continually failed to produce counsel. On June 2, 2017, the day of the hearing on Plaintiff's Motion for Default, Defendant David Schamens filed yet another Motion for Continuance. Yet again, Defendants

failed to procure counsel. Defendants' actions are impermissible. First, corporate defendants may not appear before the Court pro se.[2] Second, Defendants' lack of action betrayed the time afforded to them by the Court. Although Defendants may continue to drag their feet, the Court will not. Given Defendant's silence amidst an abuse of time, Plaintiffs' Motion for Default is ripe and the Court now takes it under consideration. Accordingly, the Court finds that Plaintiffs have sufficiently pled facts to support all of the requisite elements for the claims of fraudulent inducement, fraud, breach of fiduciary duty, constructive fraud, conversion, securities fraud, piercing the corporate veil, civil conspiracy, and unjust enrichment and constructive trust. The Court does not find sufficient support for Plaintiffs' claim for unfair and deceptive trade practice. Furthermore, Plaintiffs do not move the Court for default judgment for either their embezzlement or accounting claims and do not discuss them in their Motion for Default Judgment. The Court therefore considers those claims waived.

   a. <u>Fraudulent Inducement</u>

Plaintiffs' first claim that Defendants fraudulently induced Plaintiffs' investments into the corporate defendants. "The essential elements of fraud in the inducement are: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." <u>Whisnant v. Carolina Farm Credit</u>, 693 S.E.2d 149, 157 (N.C. Ct. App. 2010). Plaintiffs have

---

[2] "It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities. Thus, save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." <u>In re Under Seal</u>, 749 F.3d 276, 290 n.17 (4th Cir. 2014) (quoting <u>Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 202 (1993)).

fulfilled each of these elements within the well-pleaded allegations of their Complaint.

First, Defendants' representations to Plaintiffs were false representations and concealments of material fact. Defendants: (1) concealed D. Schamens' status as a permanently barred investment counselor deemed "harmful" to investors' interests by the SEC; (2) misrepresented the status of Wiegand who held himself as a corporate general counsel when he was not in fact an attorney; (3) held Piliana Shamens out as the official representative of the corporate Defendants' acts in order to conceal David Shamens and Phillips Wiegand's involvement in corporate operations; (4) misrepresented to Plaintiffs how their investments would be handled in conjunction with option strategies in order to make steady profits; and (5) created fictitious account statements showing Plaintiffs' investments making significant gains. (Doc. No. 1 ¶¶ 53, 111, 116). Rather than honor their statements, Defendants used Plaintiffs' funds for their personal benefit. (Id. at ¶ 113–14).

Second, the Defendants knew or should have known that the Plaintiffs would rely on those misrepresentations in making the determination to invest over $800,000 with the Defendants. (Id.) Defendants' misrepresentations were significant in that they completely masked the manner in which Plaintiffs' funds were to be used. Rather than "make steady profits in both up and down markets by using option strategies," Defendants diverted Plaintiffs' funds to, among other things, purchase expensive homes. (Id.) As such, Defendants' misrepresentations were reasonably calculated to deceive Plaintiffs into entrusting their life savings to the Defendants and were made with the intent to deceive because the Defendants used the Plaintiffs' savings for the Defendants' own personal use and benefit. These calculated misrepresentations damaged Plaintiffs when they invested over $800,000 in the hopes of receiving significant gains only to lose the investments to Defendants' personal use. Considering these facts, Plaintiffs have successfully established a claim

for relief based on fraudulent inducement.

      b. Fraud

"The essential elements of fraud are: (1) False representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Whisnant, 693 S.E.2d at 156–57. An actual fraud claim may derive from either an affirmative misrepresentation of a material fact or a failure to disclose material facts relating to a transaction which the parties had a duty to disclose. Id. The same misrepresentations and concealments recognized under Plaintiffs' fraud in the inducement claim suffice to fulfill a claim of actual fraud. See Id. (stating that the elements of actual fraud and fraud in the inducement were both fulfilled given their similar elements). The misrepresentations and concealments of material facts by Defendants were calculated to deceive Plaintiffs, and did deceive Plaintiffs, into investing significant sums of money under the false promise of significant gains only to be abused by Defendants for use as personal funds. (Doc. No. 1 ¶¶ 48–49, 53–54, 100–02, 109–124, 132–139). Considering these facts, Plaintiffs have successfully established a claim for relief based on fraud.

      c. Breach of Fiduciary Duty

"To state a claim for breach of fiduciary duty, a plaintiff must allege that a fiduciary relationship existed and that the fiduciary failed to act in good faith and with due regard to plaintiffs interests." Toomer v. Branch Banking and Trust Co., 614 S.E.2d 328, 337 (N.C. Ct. App. 2005) (internal quotations omitted). Courts have generally declined to define "fiduciary relationship" with specificity, acknowledging that such a relationship may exist in a variety of circumstances. Tin Originals, Inc. v. Colonial Tin Works, Inc., 391 S.E.2d 831, 833 (N.C. Ct. App. 1990) (quoting Abbitt v. Gregory, 160 S.E. 896 (N.C. 1931)). Fiduciary relationships "exist[] in all cases where

there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.... '[I]t extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.'" Id.

Defendants knowingly entered into a fiduciary relationship with Plaintiffs when they misrepresented their ability to manage Plaintiffs' funds and gain "steady profits." (Doc. No. 1, ¶ 111). Upon Defendants' representations, Plaintiffs instilled in Defendants the trust to manage and deposit Plaintiffs' funds in accounts to create profit. This created a fiduciary relationship between Plaintiffs and the Defendants.

Not only was a fiduciary relationship created between Defendants and Plaintiffs, but that duty was thereafter breached. Defendants failed to: (1) deposit funds in accounts that would benefit Plaintiffs; (2) truthfully disclose the misuse of Plaintiffs' funds for Defendants' personal benefit; (3) truthfully disclose Defendants' financial condition; (4) provide compensation or documentation after converting Plaintiffs' ownership in the corporate Defendants; (5) disclose D. Schamens' bad standing imposed by the SEC; and (5) disclose the risks involved in investing in corporate Defendants. (Doc. No. 1, ¶¶ 100–02, 109–24, 144). As such, Plaintiffs' well-pleaded allegations have established a claim for relief based on breach of fiduciary duty.

    d.  Constructive Fraud

To prove constructive fraud, a Plaintiff must prove: "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured. Intent to deceive is not an element of constructive fraud." Clay v. Monroe, 658 S.E.2d 532, 536 (N.C. Ct. App. 2008). This cause of action differs from a claim of breach of fiduciary duty in that in a constructive fraud claim,

Plaintiffs must prove that Defendants benefitted themselves. Id. at 536-37. Furthermore, "[a] claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud." Forbis v. Neal, 649 S.E.2d 382, 388 (N.C. 2007) (quoting Terry v. Terry, 273 S.E.2d 674, 677 (N.C. 1981).

Plaintiffs have already established a relationship of trust and confidence existed between themselves and Defendants. Furthermore, Plaintiffs have articulated with specificity how Defendants benefitted themselves through exploiting that relationship for personal gain, resulting in the injury of Plaintiffs. (Doc. No. 1, ¶¶ 53, 100–102, 109–124, 144). As such, Plaintiffs' well-pleaded allegations have established a claim for relief based on constructive fraud.

e. Conversion

"[C]onversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Steele v. Bowden, 768 S.E.2d 47, 55 (N.C. Ct. App. 2014) (quoting Myers v. Catoe Constr. Co., 343 S.E.2d 281, 283 (1986)). Conversion covers personal chattel – movable property – which includes money. See Gadson v. Toney, 316 S.E.2d 320, 322, (N.C. Ct. App. June 19, 1984) (involving money in a joint account). In order to succeed on a conversion claim, a plaintiff must establish two necessary elements: (1) the plaintiff's ownership interest; and (2) defendant's wrongful conversion. Id. By using Plaintiffs' funds for personal benefit rather than in accordance with the authority originally granted by Plaintiffs, Defendants exercised a right of ownership over Plaintiffs' assets to the exclusion of Plaintiffs' ownership rights. (Doc. No. 1, ¶¶ 114, 144, 153–57). As such, Plaintiffs' well- pleaded allegations have established a claim for relief based on conversion.

f. Securities Fraud

"It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly: (1) To employ any device, scheme, or artifice to defraud, (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or, (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

N.C. GEN. STAT. ANN. § 78A-8 (West 2017). Those who offer or sell a security through untrue statements or omissions of material fact are liable to the purchasing party. N.C. GEN. STAT. ANN. § 78A-56 (West 2017). The purchaser "may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if the purchaser no longer owns the security." Id.

Defendants not only made material misrepresentations in order to induce Plaintiffs to buy securities, they continued their fraudulent conduct to encourage Plaintiffs to continue their investments. (Doc. No. 1, ¶ 119). Defendants continually withheld pertinent documents and information regarding Plaintiffs' accounts. As a result, Plaintiffs invested over $800,000 with Defendants based on misrepresented, untrue statements of material fact. As such, Plaintiffs' well-pleaded allegations have established a claim for relief based on civil liability under the securities fraud statutes.

g. Unfair and Deceptive Trade Practices

N.C. GEN. STAT. ANN. § 75-1.1(a) (West 2017) declares that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." However, Chapter 75 does not apply to security transactions. Hajmm Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492-493 (N.C. 1991). North

Carolina courts have refused to apply the North Carolina Unfair and Deceptive Trade Practices Act to matters already under "pervasive and intricate regulation" by other statutory schemes that contain separate enforcement, supervisory, and remedial provisions. Skinner v. E.F. Hutton & Co, Inc., 333 S.E.2d 236, 241 (N.C. 1985) (quoting Linder, 761 F.2d at 167). Plaintiffs' Complaint alleges that Defendants were unfair and deceptive in their solicitation of investments. (Doc. No. 1, ¶113). Because the Unfair and Deceptive Trade Practices Act does not apply to security transactions, Plaintiffs' claim is unsuccessful. Furthermore, this conclusion bars Plaintiffs from seeking treble damages. N.C. GEN. STAT. ANN. §§ 75-16, 75-16.1 (West 2017).

      h. Piercing the Corporate Veil

In general, corporations are distinct from their shareholders. Green v. Freeman, 749 S.E.2d 262, 270 (N.C. 2013). The exception to this rule "allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." Id. This is known as piercing the corporate veil. The Court uses this doctrine only when defendants exploit the corporate form in order to shield themselves from liability. Id. This doctrine is not used lightly. Id.

To succeed on a claim advocating for the corporate veil to be pierced, the plaintiff must show that "the corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State." Id. (quoting Henderson v. Sec. Mortg. & Fin. Co., 160 S.E.2d 39 (N.C. 1968)). Plaintiff may fulfill this burden by demonstrating a corporate defendant's "inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, [or] absence of corporate records." Id. (citing Glenn v. Wagner, 455-58, 329 S.E.2d

326 (N.C. 1985)).

Once the fact finder establishes that the corporate veil should be pierced, a plaintiff must then establish that a non-corporate defendant may be held liable for his or her actions as an official within the corporation. Id. This inquiry may be fulfilled by presenting evidence of three elements:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time [***21] no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Id. (citing Glenn v. Wagner, 455-58, 329 S.E.2d 326 (N.C. 1985)).

Plaintiffs' complaint has successfully alleged that Defendants David and Pilliana Schamens blurred corporate identities and siphoned funds to the point of financing an expensive home in Advance, North Carolina. (Doc. No. 1, ¶ 114). Plaintiffs have also successfully pleaded Defendants David and Pilliana Schamens' "complete dominion" over the corporate defendants. For instance, the Schamens exercised such control as to use their corporation, IAM, to fraudulently prepare account statements. (Id. at ¶¶ 116-17). As the Schamens' alter ego, the corporate defendants had no separate mind or existence of their own. They were mere instruments used by the individual defendants to commit fraud upon Plaintiffs. Given Defendants' blatant exploitation of the corporate form, Plaintiffs have established that the corporate veil of the Defendant entities may be pierced. Plaintiffs have also shown that the individual Defendants may be held liable for the damage dealt to Plaintiffs by these corporate defendants.

i. Civil Conspiracy

"[T]o create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object. The gravamen of the action is the resultant injury, and not the conspiracy itself." Muse v. Morrison, 66 S.E.2d 783, 785 (N.C. 1951) (quoting Holt v. Holt, 61 S.E. 2d 448 (N.C. 1950)). A successful claim based on civil conspiracy alleges: "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 115 (N.C. 2008) (citing Muse, 66 S.E.2d at 785).

Starting with the first element, a conspiracy is defined as "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." Muse, 66 S.E.2d at 784. Plaintiffs have successfully alleged that Defendants entered a scheme to, among other things, defraud Plaintiffs by: (1) forming corporations with David Schamens, an individual known to be barred by the S.E.C.; (2) replacing David Schamens' name with that of Pilliana Shamens' name in an effort to conceal David Schamens' involvement while retaining his control over Defendant corporations; (3) drafting fraudulent account statements to prevent Plaintiffs' discovery of their funds being siphoned for Defendants' personal use. (Doc. No. 1, ¶ 55–79, 96, 109–19). The agreement between Defendants to act resulted in Plaintiffs' loss of significant money invested into the corporate Defendants. Therefore, Plaintiffs have successfully established civil liability for Defendants' conspiracy.

j. Accounting

Plaintiffs' eleventh cause of action is for "Accounting" and seeks "an accounting from the Defendants of: (1) all transfers of monies invested and paid by Plaintiffs; (2) personal purchases

made by the Defendants with Plaintiffs funds or credit; (3) all payments of any kind, including salary, distributions, dividends and expense reimbursements made to the Defendants with any of Plaintiffs' funds; and (4) all personal use by the Defendants of Plaintiffs' property." (Doc. No. 1, ¶¶ 193–94). Plaintiffs do not move the Court for default judgment on this claim and do not discuss it in their Motion for Default Judgment so the Court will treat this claim as waived.

### k. Unjust Enrichment and Constructive Trust

"Unjust enrichment is 'a claim in quasi contract or a contract implied in law.'" Butler v. Butler, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015) (quoting Booe v. Shadrick, 369 S.E.2d 554, 556, *rehearing denied*, 373 S.E.2d 540 (N.C. 1988)). This is a claim to address the failure to make restitution of benefits one party received from another through circumstances warranting an equitable accounting. Id. (quoting Watson Elec. Constr. Co. v. Summit Cos., LLC, 587 S.E.2d 87, 92 (N.C. Ct. App. 2003)). The law does not allow one to unjustly enrich himself at the expense of another. Id. In order to prevail on a claim for unjust enrichment, Plaintiff must establish five elements:

> First, one party must confer a benefit upon the other party.... Second, the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances.... Third, the benefit must not be gratuitous.... Fourth, the benefit must be measurable.... Last, the defendant must have consciously accepted the benefit.

JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 559 (N.C. Ct. App. 2013). Defendants solicited over $800,000 worth of investments from Plaintiff. (Doc. No. 1, ¶¶ 48–49, 53–54, 100–02, 109–24, 195–200). Rather than investing that money and providing promised profits to Plaintiffs, Defendants used those funds for personal benefit. (Doc. No. 1, ¶¶ 48–49, 53–54, 100–02, 109–24, 195–200). As such, Defendants were unjustly enriched and Plaintiffs have sufficiently established the right to restitution under a claim of unjust enrichment.

## IV. CONCLUSION

The Court assesses Plaintiffs' damages in accordance to their submitted affidavits. (Doc. Nos. 10–53).

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' Motion for Default Judgment, (Doc. No. 46), is **GRANTED**;

2. Judgment is entered in favor of Plaintiff Guy M. Dugan and against Defendants in the amount of $537,075.19;

3. Judgment is entered in favor of Plaintiff Karen Dugan and against Defendants in the amount of $26,554.57;

4. Judgment is entered in favor of Plaintiff GDM Family Trust and against Defendants in the amount of $68,412.53;

5. Interest from the date of entry of this judgment shall accrue at the legal rate, pursuant to 28 U.S.C. § 1961;

6. Pursuant to Fed. R. Civ. P. 54(d) and N.C. Gen. Stat. Ann. ¶ 78A-56, Plaintiffs are awarded attorney fees of $13,057.50, divided equally amongst each of them; and

7. The Clerk of Court is directed to close this case.

Signed: September 30, 2017

Robert J. Conrad, Jr.
United States District Judge